UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| HENRY M. BURGESS, JR., | ) | Civil Action No.: 4:10-cv-1678-RBH-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| COSTCO WHOLESALE CORPORATION; | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## I.     INTRODUCTION

Plaintiff, who is proceeding pro se, brings this action pursuant to Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000(e) et seq.   Presently before the court is Defendant's Motion for Summary Judgment (Document # 67).  Because Plaintiff is proceeding pro se, he was advised pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th. Cir. 1975), that a failure to respond to Defendant's Motion could result in a recommendation that the Motion be granted.  Plaintiff timely filed a Response.  All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(e) and (g), DSC.

## II.     FACTS

### A.     Costco Wholesale Corporation

Costco operates approximately 428 cash and carry membership warehouses in the United States that sell to businesses and certain individual members (customers). Matthews Decl. at ¶ 2.1. Costco sells products ranging from food, office supplies, electronics, clothing, tires, and housewares to health and beauty aids. Id.

The Myrtle Beach, South Carolina Costco warehouse employs about 158 individuals.  Id. at ¶ 4. This location has a Warehouse General Manager, who oversees all operations of the warehouse.

Id. The Warehouse General Manager is supported by two Assistant Warehouse Managers and a team of staff level managers, department managers, and area supervisors. Id. The Myrtle Beach warehouse also has a tire center that employs 6 individuals. Id.

Costco is an equal opportunity employer and is firmly committed to maintaining a workplace free from discrimination, harassment, and unlawful retaliation. Id. at ¶ 6. To that end, Costco maintains a strict policy prohibiting unlawful discrimination, harassment, and retaliation in the workplace. Id. Costco's Employee Agreement, which is distributed to all of its employees, provides the following Equal Opportunity policy:

> It always has been and continues to be Costco's policy that employees should be able to enjoy a work environment free from all forms of unlawful employment discrimination. All decisions regarding recruiting, hiring, promotion, assignment, training, termination, and other terms and conditions of employment will be made without unlawful discrimination on the basis of race, color, national origin, ancestry, sex, sexual orientation, gender identity or expression, religion, age, pregnancy, disability, work-related injury, covered veteran status, political ideology, or any other factor which cannot lawfully be used as a basis for an employment decision.

Id. at ¶ 6, Ex. 1. The Employee Agreement also includes Costco's Anti-Harassment Policy, which provides that:

> [I]t is Costco's intent to provide a working and shopping environment free from all verbal, physical and visual forms of harassment for employees, applicants, independent contractors, members, and suppliers. All employees are expected to be sensitive to and respectful of their co-workers and others with whom they come into contact while representing Costco. We prohibit all forms of harassment based upon any protected status, including race, color, national origin, ancestry, sex, sexual orientation, gender identity or expression, religion, ideology, or on the basis of any other protected status.

Id. at ¶ 6, Ex. 2. Costco is proud of its comprehensive policy prohibiting discrimination and harassment in the workplace, and vigorously enforces these policies. Id. at ¶ 7. Any employee who believes he has been subjected to discrimination, harassment, or retaliation must report this activity consistent with its Open Door Policy through one of several available avenues, at which time Costco

-2-

will promptly investigate and address the employee's concern.  Id.  Indeed, Costco also provides a specific policy regarding reporting harassment, discrimination, or retaliation and guidelines for reporting any such complaints. Id. at ¶ 8, Ex. 4.

This policy explicitly provides that employees "are required to report all incidents of harassment, discrimination, or other inappropriate behavior as soon as possible. We want to provide you with a pleasant and productive working environment, but we can't do that if these issues are not brought to our attention." Id.  All employees receive these policies as well as training on the Company's prohibition against discrimination, harassment, and retaliation at the outset of their employment.  Id. at ¶ 5.

### B.    Plaintiff's Employment At Costco

On or about October 14, 2004, Costco hired Plaintiff as a Tire Sales Assistant at Costco's Myrtle Beach warehouse.  Pl. Dep. at 61; Matthews Decl. ¶ 10.  Since being hired in 2004, Plaintiff has held various positions at the Myrtle Beach warehouse, including Merchandise Stocker, Front End Assistant, Tire Installer, and Member Services employee. Matthews Decl. ¶ 10.

The bulk of Plaintiff's claims occurred while he was a Tire Installer for the Costco tire center. Id.  The primary duties of a Tire Installer include installing, repairing, balancing, and rotating tires. Id.  Plaintiff acknowledged receiving and understanding Costco's equal opportunity and prohibited harassment policies. Pl. Dep. at 62-63, Ex. O. Plaintiff is familiar with Costco's anti-harassment policies and Costco's policy of reporting harassment and has been familiar with these policies throughout his employment with Costco. Id. at 64.

### C.    Plaintiff's Complaints

#### 1.    Plaintiff's Complaint of Sexual Harassment In 2006

Plaintiff claims that in August 2006, he was inappropriately touched by a coworker in the

Costco tire center. Compl., § III Statement of Case; Pl. Dep. at 66-82. Specifically, Plaintiff claims that in August 2006, while he worked as a Tire Installer, a fellow Costco coworker, Dan Hartle, grabbed his penis on one occasion.[1] Pl. Dep. at 67, 80, 82, 103. Plaintiff claims that on a separate occasion, Hartle rubbed a tool bar between Plaintiff's buttocks. Id. According to Plaintiff, this unwanted touching (even that which was newly raised in his February 23, 2012 deposition) all occurred between August 10, 2006 and August, 19, 2006. Compl. at 3; Pl. Dep. at 94. Plaintiff spoke with Costco General Manager, Johnny Matthews, at that time about the unwelcome touching by Hartle. Pl. Dep. at 83; Matthews Decl. ¶ 12. The only time Plaintiff spoke to Matthews about the alleged misconduct by Hartle was in August 2006. Pl. Dep. at 91; Matthews Decl. ¶ 12. Plaintiff did not raise any other complaints about unwelcome touching and admits that he was never touched by Hartle (or any other employee) after his August 2006 conversation with Matthews. Pl. Dep. at 80, 91, 94; Matthews Decl. ¶ 12.

### 2.    Plaintiff's Complaint of Mistreatment In 2009

In September 2009, Plaintiff called the Costco home office to report new complaints about mistreatment by fellow Costco employees. Pl. Dep. at 106. Specifically, Plaintiff claimed that his coworkers were accusing him of using and dealing in drugs. Id. at 105, 110. Plaintiff also alleged that although Hartle did not touch him after 2006, Hartle had been touching other men in the tire center. Id. at 100, 103. Plaintiff specifically discussed a "bullrushing"[2] incident that occurred to another Costco male employee in the tire center. Id. at 119. As a result of Plaintiff's complaint,

---

[1]Plaintiff's testimony regarding this incident is inconsistent. In Plaintiff's verified Response to Defendant's previously filed Motion to Dismiss, he states that Hartle grabbed his penis on one occasion. Pl. Resp. Def't Mot. Dismiss (Document # 48) at 1, 6. In Plaintiff's continued deposition, taken on February 23, 2012, he claims that he could not recall how many times Hartle grabbed his penis. Pl. Dep. at 80.

[2]Plaintiff testified that Hartle rushed the other employee from behind without warning and knocked him to the ground. Pl. Dep. at 94.

Costco sent a senior human resources official, Justin Callahan, to Myrtle Beach to conduct an investigation of Plaintiff's complaints, including numerous in-person interviews. Id. at 118-122; Matthews Decl. ¶ 20. Plaintiff testified that after Costco's investigation in 2009, all of the allegedly inappropriate conduct stopped, including the alleged touching of other employees and the accusations that Plaintiff was dealing illegal drugs. Pl. Dep. at 124-125. Plaintiff has not raised any other complaints to Costco since it conducted its investigation in 2009. Pl. Dep. 91-92; Matthews Decl. ¶ 20.

### D.    Plaintiff Applies To Other Positions Within Costco In 2006

In the fall of 2006, Plaintiff applied for three open positions at Costco. Pl. Dep. at 156-168; Pl. Resp. Def't Mot. Dismiss (Document # 48) at 2-3; Matthews Decl. ¶ 15, 17-18. First, in August 2006, Plaintiff applied for a transfer to the Cumberland Mall Costco warehouse located in Atlanta, Georgia to serve as the tire center supervisor. Matthews Decl. at ¶ 15. Second, around late August or early September 2006, Plaintiff applied for a full-time position in the Myrtle Beach tire center. Matthew's Decl. at ¶ 17; Pl. Dep. 166. Although the precise date of his application for the third position is unknown, Plaintiff also claims that he applied for a cart position at the Myrtle Beach warehouse sometime in the fall of 2006.[3] Matthews Decl. at ¶ 18. In each instance, Costco selected other candidates who were more senior or more qualified than Plaintiff. Id. at ¶¶ 15, 17-18. Plaintiff admits that he does not know who selected the other candidates over him or why his applications were denied. Pl. Dep. at 164-168. In November of 2006, Plaintiff applied for and was selected for another full-time Cart Pusher position. Matthews Decl. ¶ 18.

---

[3]Plaintiff also mentions two other requested transfers in February 2005 and February 2006, but admits that these could not be part of his retaliation claim as they occurred prior to his first complaints of sexual harassment in August 2006. Pl. Dep. at 160-161.

E.     **Plaintiff's 2009 EEOC Charge**

On October 9, 2009, Plaintiff filed a charge with the EEOC claiming that he was sexually harassed by a Costco coworker and that he was subject to unwelcome touching, joking and language of a sexual nature. Plaintiff further alleged that he was accused of being involved with illegal drugs. Finally, he alleges that since he reported the claims of sexual harassment to Costco in 2006, Costco has retaliated against him by denying him several requested promotions or transfers.[4] On June 30, 2010, Plaintiff filed this lawsuit, which asserted claims of sexual harassment and retaliation in violation of Title VII.

## III.     STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper.  Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof.  Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial.  Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986).  The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving

---

[4]A copy of the EEOC Charge is not in the record.  This description of the Charge is based upon representations made by Defendant in its Motion for Summary Judgment, which are undisputed by Plaintiff.

party.  Shealy v. Winston, 929 F.2d 1009, 1011 (4ᵗʰ Cir. 1991).  However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment.  Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4ᵗʰ Cir. 1992).  The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits."  Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4ᵗʰ Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings.  See Celotex, 477 U.S. at 324.  Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed.R.Civ.P. 56(c)(1)(A); see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4ᵗʰ Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4ᵗʰ Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## IV.    DISCUSSION

### A.    Timeliness of Plaintiff's Claims

Plaintiff filed his EEOC Charge of Discrimination on October 9, 2009, alleging sexual harassment and retaliation.  To pursue a Title VII claim, a plaintiff must "file a complaint with the EEOC within 180 days of the incident, or within 300 days of the incident if state or local proceedings are initiated." Beall v. Abbott Labs., 130 F.3d 614, 620 (4th Cir.1997); 42 U.S.C. § 2000e-5(e)(1); National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). Here, Plaintiff is required to file his Charge of Discrimination within 300 days following the alleged discriminatory acts.  Thus, Defendant argues that Plaintiff is limited to challenging employment actions that occurred after December 13, 2008.

-7-

Plaintiff testified that the last incident of alleged sexual harassment directed at him occurred in August 2006. Pl. Dep. at 80, 94. However, Plaintiff argues that this claim is not time-barred because the inappropriate touching, albeit not to him, continued through 2009 until Justin Callahan came to conduct an investigation. Thus, Plaintiff argues, the sexual harassment was a continuing violation.

The Morgan Court held that "the statute precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period" but that behavior alleged outside of the statutory time period may be considered "for the purposes of assessing liability, so long as an act contributing to the hostile environment takes place within the statutory time period." Id. at 105. Hostile environment claims occur over a series of days or perhaps years; a hostile environment claim is based upon the cumulative effect of individual acts. Id. at 115. "In order for a claim to be timely, the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment." Id. at 118. The reach of the continuing violations doctrine in the context of a hostile work environment claim is not limitless, however, as the otherwise time-barred conduct must be related to non-time-barred conduct. See, e.g., Holland v. Washington Homes, Inc., 487 F.3d 208, 219 (4th Cir.2007).

Plaintiff attempts to combine two distinct types of inappropriate conduct to assert a continuing violation and pull his otherwise time-barred complaint of unwanted touching before the court. However, while the conduct on the part of Hartle may have been similar, that is, he may have inappropriately touched Plaintiff as well as others, the conduct as it relates to Plaintiff is not the same. As they relate to Plaintiff, one involves actual, unwanted physical contact while the other involves witnessing physical contact against others. Courts have held that harassment directed at an individual is not the same as witnessing harassment directed at others. See, e.g., McKenzie v.

Milwaukee Cnty., 381 F.3d 619, 624 (7th Cir. 2004) (affirming summary judgment dismissing hostile environment claim of sheriff's deputy; impact of second-hand incidents involving other female employees is not as great as harassment directed at plaintiff herself); Patt v. Family Health Sys., Inc., 280 F.3d 749, 754 (7th Cir. 2002) (affirming summary judgment on hostile work environment claim because conduct was not severe or pervasive concluding that "'second-hand' harassment is obviously not as great as harassment directed toward [plaintiff] herself").  Hartle's unwanted touching of Plaintiff that began and ended in 2006 is a discrete act, separate from the "horse playing" Plaintiff witnessed through 2009. Pl. Response pp. 2-3 (characterizing the unwanted touching as "horse playing").  Therefore, the conduct that occurred in 2006 is not sufficiently related to the conduct in 2009 as contemplated by Morgan to create a continuing violation.  Accordingly, Plaintiff's complaint stemming from the 2006 incidents is time-barred and summary judgment is appropriate on this claim.

Moreover, Plaintiff's claims that he was denied requested transfers or promotions in retaliation for his complaints also relate exclusively to events that occurred in 2006.  Pl. Dep. at 164-166.  Therefore, Plaintiff's claims of retaliation in 2006 for reporting the said sexual harassment are time-barred because they occurred before December 18, 2008.  Accordingly, summary judgment is appropriate on these claims.

In his Response to Defendant's Motion for Summary Judgment, Plaintiff argues that his retaliation claim is not based upon his failure to receive transfers or promotions in 2006, but rather is based upon an injury he received in the tire center on June 12, 2010, when the Manager, Nick Tarbuck, asked him to lift a vehicle.  Plaintiff argues that Tarbuck asked him to do this, possibly knowing he would be injured, which resulted in permanent back impairment to Plaintiff, a transfer out of the tire center and a pay cut.  To the extent this is the basis for Plaintiff's retaliation claim, it

-9-

would not be time-barred.

The only other claim not time-barred is Plaintiff's hostile work environment claim regarding unwanted touching of other employees and the accusations by his co-workers that he was involved with illegal drugs. For the reasons discussed below, this hostile work environment claim and the retaliation claim are also subject to dismissal.

### B.     Hostile Work Environment Claim

Title VII prohibits an employer from subjecting an employee to a hostile work environment because of the employee's protected class. 42 U.S.C. § 2000e–2(a) (1). The burden-shifting proof scheme established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) applies to hostile work environment claims. Under this burden-shifting scheme, Plaintiff has the initial burden of establishing a prima facie case of discrimination. Id. To state a prima facie case of a hostile work environment, a plaintiff must demonstrate that: (1) he experienced unwelcome harassment; (2) the harassment was based on his protected class; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." Chao v. Rivendell Woods, Inc., 415 F.3d 342, 347 (4th Cir.2005); White v. BFI Waste Servs., LLC, 375 F.3d 288, 297 (4th Cir.2004); Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003).

As noted above, the only claims that are not time-barred in this action are Plaintiff's allegations regarding Hartle touching other workers inappropriately and his coworkers accusations that Plaintiff was using and dealing illegal drugs. Plaintiff fails to present sufficient evidence to establish a prima facie case of a hostile work environment because he has not shown that the harassment was sufficiently severe or pervasive to alter the conditions of his employment or that it was based upon his membership in some protected class.

"Courts determine whether an environment is sufficiently hostile or abusive by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Jordan v. Alternative Resources Corporation, 458 F.3d 332, 339 (4th Cir.2006) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 787–88, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)) (internal quotation marks omitted). The Supreme Court has stated that "[a] recurring point in [our] opinions is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" Faragher, 524 U.S. at 788 (citation and internal quotation marks omitted). Here, Plaintiff's witnessing of inappropriate touching by Hartle is not sufficiently severe or pervasive to constitute a hostile work environment for Plaintiff.[5]  See, e.g., McKenzie v. Milwaukee Cnty., 381 F.3d 619, 624 (7th Cir. 2004) (affirming summary judgment dismissing hostile environment claim of sheriff's deputy; impact of second-hand incidents involving other female employees is not as great as harassment directed at plaintiff herself); Patt v. Family Health Sys., Inc., 280 F.3d 749, 754 (7th Cir. 2002) (affirming summary judgment on hostile work environment claim because conduct was not severe or pervasive concluding that "'second-hand' harassment is obviously not as great as harassment directed toward [plaintiff] herself").

Additionally, Plaintiff has failed to present sufficient evidence to show that his coworkers' accusations that he was using and dealing illegal drugs was based upon some class protected under Title VII.  To meet this element, a plaintiff must show that "but for" the protected characteristic, he would not have been a victim of harassment. See Causey v. Balog, 162 F.3d 795, 801 (4th Cir.1998).

---

[5]It is noted that, although the 2006 incidents are not actionable themselves, they can be considered as evidence of the hostile work environment.  Nevertheless, Plaintiff still fails to present evidence of a sufficiently severe and pervasive work environment.

Plaintiff fails to present evidence to meet this element. For these reasons, Plaintiff fails to present sufficient evidence to create a prima facie case of hostile work environment and, thus, summary judgment is appropriate on this claim.

### C.    Retaliation

Title VII makes it an "unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation under Title VII, a plaintiff must show (1) he engaged in protected activity, (2) the employer took adverse employment action against him, and (3) a causal connection existed between the protected activity and the adverse action. Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir.1985); Laughlin v. Metropolitan Washington Airports Authority, 149 F.3d 253, 258 (4th Cir.1998); Causey v. Balog, 162 F.3d 795, 803 (4th Cir.1998). If Plaintiff establishes a prima facie case, Defendant can rebut the presumption of retaliation by articulating a non-retaliatory reason for its actions. At that point, Plaintiff has the opportunity to prove that Defendant's legitimate, non-retaliatory reason is pretextual. See Matvia v. Bald Head Island Management, 259 F.3d 261, 271 (4th Cir.2001).

To establish "protected activity," Plaintiff must show he opposed an unlawful employment practice which he reasonably believed had occurred or was occurring. Bigge v. Albertsons, Inc., 894 F.2d 1497, 1503 (11th Cir.1990); see also Ross, 759 F.2d at 355 n. 1 (stating that a Title VII oppositional retaliation claimant need not show that the underlying claim of sexual harassment was in fact meritorious in order to prevail). "[T]he 'opposition clause,' by its very terms, requires that the employee at least have actually opposed employment practices made unlawful by Title VII. That is to

say, the clause protects opposition neither to all unlawful employment practices nor to practices the employee simply thinks are somehow unfair." McNair v. Computer Data Sys., Inc., 172 F.3d 863, 1999 WL 30959, at *5 (4th Cir.Jan.26, 1999) (unpublished). Plaintiff engaged in protected activity when he complained to general manager Johnny Matthews about Hartle's unwanted touching in 2006 and when he called Defendant's home office in September of 2009 to complain of the unwanted touching of other individuals and his coworkers' accusations that Plaintiff used and dealt illegal drugs. He also engaged in protected activity when he filed his Charge of Discrimination with the EEOC on October 9, 2009.

The Supreme Court has clarified that a different and less strenuous standard is used to define adverse employment actions in the retaliation context as opposed to other Title VII contexts: "[T]he anti-retaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." Burlington Northern & Santa Fe Rwy. v. White, 548 U.S. 53, 64, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). However, the anti-retaliation provision "protects an individual not from all retaliation, but from retaliation that produces an injury or harm." Id. at 67. Thus, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. at 68 (quotation marks and citations omitted).

Plaintiff appears to argue that he suffered an adverse employment action when he was asked by his manager to lift a vehicle so a block could be placed underneath.[6] Pl. Dep. pp. 169-76. He asserts that no manager should ever ask an employee to lift a car without the necessary tools. Pl.

---

[6]As discussed above, any claims of retaliation with respect to promotion and transfer denials in 2006 are time-barred.

Dep. pp. 169-70. In addition, lifting vehicles was not in his job description as a tire sales assitant-installer. <u>See</u> Job Analysis for Tire Sales Assistant Installer (attached as Ex. 10 to Pl. Response). Asking an employee to perform a physically strenuous task outside his job description could dissuade a reasonable employee from supporting a charge of discrimination. Thus, Plaintiff has presented sufficient evidence to satisfy the adverse employment element of his <u>prima</u> <u>facie</u> case.

Nevertheless, Plaintiff has failed to present evidence sufficient to show a causal connection between his protected activity and his adverse employment action. To meet the causal connection requirement, a plaintiff must show that the adverse action would not have occurred "but for" the protected conduct. <u>Ross v. Communications Satellite Corp.</u>, 759 F.2d 355, 365-66 (4th Cir.1985) overruled on other grounds by <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228 (1989). "A causal relationship [between protected activity and adverse action] requires more than simple coincidence. Causation requires the employer's action be the consequence of the protected activities and of nothing else." <u>Bray v. Tenax Corp.</u>, 905 F. Supp. 324, 328 (E.D.N.C. 1995). Plaintiff asserts that his manager, Nick Tarbuck, and Hartle were friends. Nevertheless, this friendship is insufficient to show that Tarbuck would not have asked Plaintiff to lift the car had Plaintiff not filed complaints against Hartle for harassment. <u>See</u>, <u>e.g.</u>, <u>Mills v. Oklahoma ex rel. Dept. of Corrections</u>, No. CIV-07-891-D, 2010 WL 1757925, *6 (W.D.Okla. April 30, 2010) (finding no causal connection despite friendship of decisionmaker and individual against whom Plaintiff complained). Furthermore, the span of time between Plaintiff's Charge of Discrimination, filed October 9, 2009, and Tarbuck's request that Plaintiff lift the vehicle on June 12, 2010, is too great to create causal connection between the two events based upon temporal proximity alone. <u>See</u>, <u>e.g.</u>, <u>Clark Cnty. Sch. Dist. v. Breeden</u>, 532 U.S. 268, 273 (2001) (per curiam) (quotations omitted) (citing cases where three and four months temporal proximity were insufficient to establish prima facie causation); <u>see</u> <u>also</u> <u>Wang</u>

v. Metro. Life Ins. Co., 334 F.Supp.2d 853, 869–870 (D.Md.2004) (holding that where the plaintiff made several formal and informal complaints but was never disciplined, termination less than one month after an informal complaint was insufficient to establish causation). Therefore, because Plaintiff has failed to present evidence of a causal connection between his complaints of harassment and his direction to lift a vehicle, he fails to establish a prima facie case of retaliation and summary judgment is appropriate.

## V.    CONCLUSION

For the reasons discussed above, it is recommended that Defendant's Motion for Summary Judgment (Document # 67) be granted and this case be dismissed.


 s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

January 8, 2013
Florence, South Carolina

**The parties' attention is directed to the important notice on the following page.**